1  CARL M. HEBERT, ESQ.
   Nevada Bar #250
2  2215 Stone View Drive
   Sparks, NV 89436
3  (775) 323-5556
   carl@cmhebertlaw.com
4
   DANIEL S. BRETZIUS, ESQ. – PRO HAC VICE
5  Dan B Law PLLC
   75 South Main Street, #272
6  Concord, NH 03301
   (603) 731-2507
7  dan@danblaw.com

8  Attorneys for Defendant Patrick Grimes

9                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
10

11  ALTERNATIVE PETROLEUM
    TECHNOLOGIES HOLDINGS,
12  CORP. and ALTERNATIVE
    PETROLEUM TECHNOLOGIES,
13  INC.,

14          Plaintiffs,                    Case Number

15      vs.                                        3:20-cv-00040-MMD-CLB

16  PATRICK GRIMES,                        Defendant's Motion for Attorney Fees

17          Defendant.

18

19              **DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

20

21          Pursuant to at least Fed. R. Civ. P. 54(d)(2) and LR 54-14, Defendant Patrick

22  Grimes hereby moves for attorney's fees against Plaintiffs and their counsel, jointly and

23  severally. In support thereof, Defendant Patrick Grimes states as follows:

1

1

**SUMMARY**

2    Pursuant to Fed. R. Civ. P. 54(d)(2) and LR 54-14, Defendant hereby requests that

3    the court order Plaintiffs and their counsel, jointly and severally, to pay Defendant's

4    reasonable attorney fees, at a reasonable hourly rate of $320/hour for Attorney Bretzius[1],

5    for 167.0 hours of attorney time, and at a reasonable hourly rate of $450/hour for Attorney

6    Hebert[2], for 24.1 hours of attorney time. Additionally, Defendant seeks $3,230.90 in

7    nontaxable costs. Thus, Defendant requests that the Court order Plaintiffs and their counsel

8    to pay, jointly and severally, $67,515.90 to Defendant.

9    The Defendant is entitled to attorney fees pursuant to at least 35 U.S.C. § 285;

10   28 U.S.C. § 1927; and the court's inherent power. The Defendant requests an hourly rate

11   of $320/hour and $450/hour, which is at or below the market rate for services of lawyers

12   with comparable skill and experience in this district. The amount of time reported herein

13   for each of the services provided is reasonable given the work product required by

14   Plaintiffs' actions and the work product filed with the Court. Accordingly, the attorney's

15   fees sought are authorized by law, reasonable, and should be awarded to Defendant.

16

**DETAILS OF FEE REQUEST**

17   **I.    HOURLY RATE**

18   Defendant requests attorney fees at a reasonable hourly rate of $320/hour for

19   Attorney Bretzius and $450/hour for Attorney Hebert.

20   Generally, when determining a reasonable hourly rate, the relevant community is

21   the forum in which the district court sits. Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir.

22

23   [1] Attorney Bretzius has been practicing law for almost eight (8) years.
     [2] Attorney Hebert has been practicing law for forty (40) years.

1  1997). Reasonable hourly rates are "those prevailing in the community for similar services

2  by lawyers of reasonably comparable skill, experience, and reputation." Id. (citing Blum v.

3  Stenson, 465 U.S. 886, 895 n.11 (1984)).

4       In 2021, this District has repeatedly found reasonable hourly rates to be at least

5  $350/hour for attorneys with experience similar to Attorney Bretzius and approximately

6  $500/hour for attorneys with experience similar to Attorney Hebert. See, e.g., Wunderlich

7  v. State Farm Mutual Automobile Ins. Co., Case No. 2:21-cv-00486 (D. Nev. Dec. 28,

8  2021) (awarding $375/hour for nine-year practitioners and $550/hour for well-known

9  practitioner who has practiced law for over 30 years); Moreland v. Goldy LLC, Case No.

10  2:19-cv-01971-KJD-NJK (June 22, 2021) (approving $350/hour); Gunn v. Grage, Case

11  No. 2:19-cv-2102-JCM-EJY (Mar. 5, 2021) (finding $525-$675/hour reasonable for

12  attorneys and $265/hour reasonable for paralegal); Perrong v. Sperian Energy Corp., Case

13  No. 2:19-cv-00115-RFB-EJY (Jan. 4, 2021); (approving $450-$500/hour for attorneys and

14  $275/hour for law clerk).

15       The requested hourly rates of $320/hour and $450/hour exceed the rate typically

16  found reasonable for law clerks and paralegals but are lower than the prevailing rate for

17  attorneys with similar experience, *supra*. Accordingly, the Court should find the

18  Defendant's requested hourly rates to be reasonable and appropriate.

19  **II.**     **ITEMIZATION OF WORK PERFORMED**

20       Defendant requests attorneys' fees for 191.1 total hours of attorney time, as

21  specifically set forth in itemization attached hereto as Exhibit A, with 24.1 hours performed

22  by Attorney Hebert and 167.0 hours performed by Attorney Bretzius.

23

1    III.    **TOTAL AMOUNT OF ATTORNEY FEES TO BE AWARDED**

2        The lodestar method is the customary method the court uses when determining

3    attorneys' fees. <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir. 1996). "The

4    `lodestar' is calculated by multiplying the number of hours the prevailing party reasonably

5    expended on the litigation by a reasonable hourly rate." <u>Id.</u>; <u>see also</u> <u>McGrath v. City of</u>

6    <u>Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995).

7        Based on the above, the lodestar in this matter is calculated by multiplying 167.0

8    hours by the reasonable hourly rate of $320/hour, and 24.1 hours by the reasonable hourly

9    rate of $450/hour, to equal a total lodestar amount of $64,285:

10               Attorney Bretzius    167.0 hours X $320/hour = $53,440

11               Attorney Hebert    24.1 hours X $450/hour = $10,845

12                        Total Lodestar Amount = $64,285

13        The lodestar amount is a presumptively reasonable fee. <u>Camacho v. Bridgeport</u>

14    <u>Fin., Inc.</u>, 523 F.3d 973, 982 (9th Cir. 2008). Although presumptively reasonable, the court

15    may adjust the lodestar amount based on the *Kerr* factors to account for facts that have not

16    been subsumed in the lodestar calculation. <u>Id.</u> As required by LR 54-14(a)(3), the

17    Defendant has attached hereto as Exhibit B a brief summary of the *Kerr* factors for the

18    Court's further review, as necessary. <u>See</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67,

19    70 (9th Cir. 1975).

20    IV.    **ITEMIZATION OF NONTAXABLE COSTS**

21        Pursuant to LR 54-14(a)(2), Defendant requests $3,230.90 in nontaxable costs, as

22    specifically set forth in the itemization and supporting documentation attached hereto as

23    Exhibit C.

4

1    **V.    ATTORNEY AFFIDAVITS**

2        Pursuant to L.R. 54-14(b), Defendant has provided herewith the required Attorney

3    Affidavits as Exhibits D and E.

4

5                    **MEMORANDUM OF POINTS AND AUTHORITIES**

6    **I.    ATTORNEY FEES, GENERALLY**

7        "Generally, litigants in the United States pay their own attorneys' fees, regardless

8    of the outcome of the proceedings." Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir.

9    2003). "In order to encourage private enforcement of the law, however, Congress has

10   legislated that in certain cases prevailing parties may recover their attorneys' fees from the

11   opposing side. Id. An award of attorneys' fees serves the important purpose of "deter[ring]

12   the bringing of lawsuits without foundation." CRST Van Expedited, Inc. v. EEOC

13   ("CRST"), 578 U.S. 948, 962 (2016). (quotation omitted).

14       Here, Defendant is entitled to attorney fees pursuant to 38 U.S.C. § 285; 28 U.S.C.

15   § 1927; and the Court's inherent power.

16   **II.    38 U.S.C. § 285.**

17   **A.  Standard**

18   **38 U.S.C. § 285 provides, in its entirety, that:**

19            "The court in exceptional cases may award reasonable
              attorney fees to the prevailing party."
20

21       In Octane Fitness, LLC v. ICON Health & Fitness, Inc. ("Octane"), 572 U.S. 545,

22   554 (2014), the Supreme Court held that "an "exceptional" case is simply one that stands

23   out from others with respect to the substantive strength of a party's litigating position

1  (considering both the governing law and the facts of the case) or the unreasonable manner

2  in which the case was litigated." "District courts may determine whether a case is

3  "exceptional" in the case-by-case exercise of their discretion, considering the totality of the

4  circumstances". <u>Octane</u>, 572 U.S. at 554. In assessing the totality of the circumstances, the

5  Court may consider, inter alia, "frivolousness, motivation, objective unreasonableness

6  (both in the factual and legal components of the case) and the need in particular

7  circumstances to advance considerations of compensation and deterrence." <u>Id.</u> at n.6.  The

8  Supreme Court has urged that "equitable discretion should be exercised `in light of the

9  considerations we have identified.'" <u>Id.</u> at 554. "Section 285 demands a simple

10  discretionary inquiry; it imposes no specific evidentiary burden, much less such a high

11  one." <u>Id.</u> Defendant must prove its Section 285 motion by a preponderance of the evidence.

12  <u>Id.</u>

13  **B.  Defendant is the Prevailing Party.**

14  In order to be a "prevailing party" under 35 U.S.C. § 285, "a defendant need not

15  obtain a favorable judgment on the merits in order to be a `prevailing party.'" <u>CRST</u>, 578

16  U.S. at 962-63. "The defendant may prevail even if the court's final judgment rejects the

17  plaintiff's claim for a nonmerits reason." <u>Id.</u> at 963. This is logical, explained the U.S.

18  Supreme Court, because "[t]he defendant has ... fulfilled its primary objective whenever

19  the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's

20  decision," even if the defendant "might prefer a judgment vindicating its position regarding

21  the substantive merits of the plaintiff's allegations." <u>Id.</u> As Wright & Miller explains with

22  respect to awarding costs to the prevailing party, "dismissal of the action, whether on the

23  merits or not, generally means [the] defendant is the prevailing party," 10 Wright, Miller

6

1  & Kane, Federal Practice and Procedure § 2667 (3d ed. 2002); see also Raniere v. Microsoft

2  Corp., 887 F.3d 1298 (Fed. Cir. 2018) (defendant who obtained dismissal for lack of

3  standing found to be the prevailing party).

4        Here, Defendant's Motion for Summary Judgment was granted because Plaintiffs

5  lacked standing. ECF No. 50. As a result, the Court dismissed the case in its entirety. Id.

6  Judgment was entered in favor of Defendant. ECF No. 51. As a result, Defendant is the

7  prevailing party.

8    **C. This matter is an Exceptional Case.**

9        The Court must determine whether this was an "exceptional case," considering the

10  totality of the circumstances under a preponderance of the evidence standard.

11       For the Court's guidance, similar cases have been found "exceptional" where the

12  facts fall into at least one or more of the following categories: (1) the plaintiff failed to

13  conduct pre-filing investigation; (2) the plaintiff's motivation for filing suit was to be a

14  nuisance; (3) the case was resolved on minimal required evidence or fact finding; (4) the

15  plaintiff was on notice of a frivolous litigation position and did nothing to correct it; and

16  (5) the plaintiff hid and/or failed to disclose material evidence. This case has all of these

17  factors.

18                **i.  Pre-Filing Investigation**

19       Cases where a pre-filing investigation would have avoided litigation have been

20  found to be exceptional. See, e.g., ThermoLife International LLC v. GNC Corp., 922 F.3d

21  1347, 1355 (Fed. Cir. 2019) (pre-suit investigation would have revealed frivolous lawsuit);

22  Adjustacam, LLC v. Newegg, Inc., 861 F.3d 1353, 1361 (Fed. Cir. 2017) (pre-suit

23  investigation would have revealed that accused product did not rotate as required for

7

infringement); <u>Lumen View Technology LLC v. Findthebest. com</u>, Inc., 811 F. 3d 479 (Fed. Cir. 2016) (pre-suit investigation would have revealed that accused product did not have required feature for patent infringement).

### ii. Nuisance

Prior cases have been found exceptional where they were filed only to serve as a nuisance to defendant. <u>See, e.g.</u>, <u>Lumen View Technology LLC</u>, 811 F. 3d 479 (motivation for filing suit was to be a nuisance to defendant to extract a settlement); <u>Eon-Net LP v. Flagstar Bancorp</u>, 653 F.3d 1314, 1327 (C.A. Fed. 2011) (patent holder "acted in bad faith by exploiting the high cost to defend [patent] litigation to extract a nuisance value settlement").

### iii. Minimal Evidence or Fact-Finding

Cases have been found exceptional when they are resolved with little or no necessary factual investigation. <u>See, e.g.</u>, <u>Pop Top Corp. v. Rakuten Kobo Inc.</u>, Case No. 20-cv-04482-DMR (N.D. Cal Jan. 28, 2022) (plaintiff's taking of zero depositions and little discovery demonstrates case is exceptional); <u>Giesecke & Devrient GmbH v. United States</u>, 146 Fed. Cl. 631 (Fed. Cl. 2020) ("Unlike many Section 285 requests, this case is in the early stages of litigation… [and] did not take much development of a record …mak[ing] this case 'stand out' from others");

### iv. Notice and Failure to Cure

When a plaintiff continues to litigate with explicit actual notice of the defect in its case, such as a lack of standing, the case is found exceptional. <u>See, e.g.</u>, <u>Raniere v. Microsoft Corp.</u>, 887 F.3d 1298 (Fed. Cir. 2018) (plaintiff promised to produce evidence to cure standing defect and repeatedly failed to produce said evidence); <u>Adjustacam, LLC</u>,

1    861 F.3d at 1361 (plaintiff litigated in unreasonable manner when it knowingly failed to

2    provide expert report with notice to do so); Nat'l Oilwell Varco, L.P. v. Omron Oilfield &

3    Marine, Inc., 676 Fed.Appx. 967, 973 (Fed. Cir. 2017) (plaintiff was on notice about its

4    potential lack of standing when defendant from another case challenged the lack of a

5    written assignment); Intex Recreation Corp. v. Team Worldwide Corp., 77 F. Supp. 3d 212

6    (D.D.C. 2015) (court's claim construction order foreclosed further infringement argument

7    and made continuance of the action exceptionally meritless).

8                              **v.  Failure to Disclose**

9          Prior cases have been held exceptional where a plaintiff hides or fails to disclose

10   evidence to the defendant and the Court. See, e.g., Iris Connex, LLC v. Dell, Inc., 235  F.

11   Supp.  3d  826,  862  (E.D. Tex  2017)  (individual  hid  real  party  in  interest  and

12   plaintiff's standing by executing an assignment without authority).

13                      **vi.   The present case is exceptional based on its substantive strength**
                              **and the manner in which the case was litigated, consistent with**
14                            **similar precedent.**

15         This case is exceptional for all of the reasons described in the above precedent, as

16   well as additional circumstances that have not been, and may never be, seen in any case.

17         First  and  foremost,  it  is  self-evident  that  plaintiff  conducted  no  pre-filing

18   investigation. In fact, Plaintiffs allegedly sent a demand letter on January 16, 2020 to

19   inform Defendant of Plaintiff's "allegations" regarding three of the five patents, and

20   Plaintiff filed suit five (5) calendar days later on January 21, 2020. See ECF No. 1 at p

21   98/99. Even if it wasn't self-evident, Plaintiffs admitted at deposition that they conducted

22   no prefiling investigation:

23

1           Q:     Did plaintiffs do anything to investigate the claims made by
Mr. Waldron that there was improper inventorship?

2

           A:     Not that I'm aware of. We believe what Jack said.
3                                   ECF No. 36-8, 42:25-43:4.

4           If the Plaintiffs had actually conducted any pre-suit investigation, they would have

5    discovered many flaws of their case, including that they did not own the subject patents.

6    Such investigation would have saved the Court and Defendant two years' worth of time

7    and resources. But, the Plaintiffs did not seek to conduct any prefiling investigation because

8    their sole purpose in filing suit against Defendant was to serve as a nuisance. Specifically,

9    in Nevada state court, Defendant has initiated a lawsuit against the Plaintiffs. In retaliation,

10   the Plaintiffs alleged that they owned patents so that they could sue Defendant to drain his

11   resources and stay/delay his state lawsuit. This is the type of conduct that is found to make

12   a case exceptional.

13         Additionally indicative of the exceptionality of this case is the fact that this entire

14   action was resolved solely based on a three-page document. See ECF No. 36-20. It is even

15   worse that said document was not timely produced by Plaintiffs in their initial disclosures

16   and was not produced by Plaintiffs after many interrogatory and production requests.

17   Instead, Plaintiffs responded to Defendant's discovery requests, including those asking for

18   Plaintiffs' alleged "chain of title to and ownership of the patents-in-suit" by objecting that

19   such requests were "Burdensome", "Duplicative", and "Compound". See ECF No. 36-23,

20   Interrogatory #2. Plaintiffs even alleged that Plaintiffs produced "relevant, non-privileged

21   documents, to the extent that such documents exist" when no written assignment had been

22   provided! See Id. On February 12, 2021, approximately one week prior to the close of

23   Discovery and after repeated letters and correspondence from Defendant's counsel,

1    Plaintiffs finally supplemented their responses and produced the fatal three-page

2    assignment document, buried in almost 2000 pages of duplicative production and

3    intentionally mislabeled as "Highly Confidential – Attorney's Eyes Only". Yet again,

4    Plaintiffs' actions required further action from Defendant's counsel, including yet another

5    letter to contest the improper classification, to which Plaintiffs never even responded. (As

6    the Court is aware, assignment documents are typically made part of the public record, but

7    Plaintiffs here have attempted to rely on numerous ownership documents that were not of

8    record and were seemingly created during this litigation.) These types of activities are

9    characteristic of an exceptional case.

10           If the above was not bad enough, Plaintiffs were on notice from the Defendant and

11   the Court that their suit was fatally flawed. See ECF No. 21, p. 4, lines 18-19 ("It then

12   became the obligation of APT to produce evidence of standing – an ownership interest in

13   the patents"); ECF No. 31, p. 5, lines 27-28 ("If Plaintiffs were not the assignee and

14   exclusive licensee of the patents, they might not have standing."). Plaintiffs did nothing to

15   cure the noticed standing defect, except seemingly fabricate the fatal three-page assignment

16   document during this litigation. Plaintiffs' failures to correct after notice are sufficient to

17   make this case exceptional. Raniere v. Microsoft Corp., 887 F.3d 1298 (Fed. Cir. 2018)

18   (case held exceptional where plaintiff failed to produce evidence of standing). However,

19   the case became even more exceptional, as, after Plaintiffs admitted that their chain of title

20   was invalid, they continued to litigate frivolously, including requiring Defendant to file a

21   Reply (ECF No. 44) and respond to a frivolous Motion to Strike (ECF No. 43) that required

22   more time and cost expenditures from Defendant that were not needed.

23

1    Even more, correction of inventorship is very typically resolved by a motion in a

2    related patent infringement suit. However, because Plaintiffs have not identified any

3    alleged infringer and sought solely to expose Defendant to expenditures of time and money,

4    they commenced and maintained this two-year lawsuit for correction of something that is

5    typically resolved by motion. This, too, evidences the exceptionality of this case.

6    Finally, unbeknownst to the Court or the Defendant at the time, contemporaneous

7    to the Court's December 2020 order, Plaintiffs actively sought to destroy evidence while

8    discovery was still open in this matter. Specifically, in late 2020, Plaintiffs intentionally

9    refused to pay rental fees for their storage unit, so that the contents would be sold or

10   destroyed, and not accessed by Defendant. Plaintiffs failed to maintain a litigation hold.

11   Defendant propounded timely discovery requests in January 2021 and Plaintiffs did not

12   even have custody of the storage unit. Tellingly, Plaintiffs did not even inform Defendant

13   that they had lost custody of the storage unit. With discovery of Plaintiffs' misconduct,

14   Defendant was obligated to stop destruction of the contents (See ECF No. 46) and pay to

15   retain the contents pending the disposition of this matter. These costs should be included

16   as part of the fees and nontaxable costs that Plaintiffs should be ordered to pay, caused by

17   Plaintiffs' violation of the mandatory litigation hold. Defendant is not aware of any other

18   instance where a plaintiff has willfully sought to destroy evidence while maintaining its

19   own action, which clearly makes this case one of the most exceptional cases under patent

20   law.

21   In light of all of the above circumstances, Plaintiff clearly litigated in an

22   unreasonable manner and this case is exceptional. Defendant is entitled to attorneys fees

23   pursuant to 35 U.S.C. § 285.

### III.    28 U.S.C. § 1927 & Court's Inherent Power

Additionally or alternatively, Defendant is entitled to attorney fees pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

### A.  Standard

28 U.S.C. § 1927 provides that:

> "Any attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

An award of fees under 28 U.S.C. § 1927 requires a finding of subjective bad faith, which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1528 (9th Cir. 1990); see also Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998).

In addition to the points discussed above that are applicable to this discussion, this case parallels very closely to many cases that have awarded attorney fees under 28 U.S.C. § 1927 and the Court's inherent power.

First, statutory standing is such a basic foundational principle that courts expect plaintiffs' attorneys to know if their clients do or do not have standing. Proceeding with an obvious lack of standing, like the Plaintiffs did here, warrants attorney fees. See Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc., No. 12-2143-STA, at *4 (W.D. Tenn. Aug. 24, 2012) (finding case frivolous and without any basis in law where "counsel for Plaintiff[s] reasonably should have known that all Plaintiffs lacked standing to bring this suit" because named entity was not associated).

1     Second, the present Plaintiffs only sought to recover attorney fees in this action

2  (ECF No. 16-1) and ultimately "concede[d] their chain of title was invalid" when proven

3  so by Defendant. ECF No. 50 at p. 3, line 8-9. This is likewise grounds for attorney fees.

4  See Advocates for Individuals with Disabilities, LLC v. MidFirst Bank, No. CV-16-01969-

5  PHX-NVW (D. Ariz. July 24, 2018) (awarding defendant fees where plaintiff sued solely

6  to recover plaintiff's attorney fees and where plaintiff conceded that they lacked standing

7  when challenged).

8     Third, Plaintiffs' counsel continued to file and multiply the proceedings after

9  conceding that his clients did not have standing, including requiring Defendant to prepare

10  a Reply (ECF No. 44) regarding the Motion for Summary Judgment, requiring Defendant

11  to respond to a Motion to Strike (ECF No. 43); and requiring Defendant to take action to

12  preserve evidence that Plaintiffs were responsible for maintaining (ECF No. 46). None of

13  these proceedings should have been necessary. Almost the entirety of the proceedings

14  occurred after Plaintiffs were already on notice from the Defendant and Court that they

15  needed and did not have ownership of the patents. See ECF No. 21, p. 4, lines 18-19 ("It

16  then became the obligation of APT to produce evidence of standing – an ownership interest

17  in the patents"); see also ECF No. 31, p. 5, lines 27-28 ("If Plaintiffs were not the assignee

18  and exclusive licensee of the patents, they might not have standing."). The bulk of the

19  proceedings could have been entirely avoided if Plaintiffs and Plaintiffs' counsel timely

20  conceded their noticed fatal flaw in ownership. Plaintiffs required these additional filings

21  to add delay and expense to Defendant's state action against Plaintiffs. These types of

22  conduct are clearly those that 28 U.S.C. § 1927 was designed to deter.

23

1          Fourth, Plaintiffs' counsel played discovery games to require Defendant's counsel

2    to spend time and effort responding to frivolous discovery issues. By way of brief example,

3    Plaintiffs' counsel (1) failed to provide foundational ownership responses and documents

4    in response to discovery requests; (2) intentionally mislabeled said documents as "Highly

5    Confidential" amongst duplicative documents when finally provided; and (3) prohibited

6    Defendant from observing deposition testimony relevant to patent ownership. The fact that

7    all of this information normally is and should have been part of the public assignment

8    record available at the USPTO only further illuminates the frivolousness of these actions.

9          Finally, Plaintiffs' intentional, reckless, and bad faith attempts to destroy their

10   documents resulted in additional proceedings and expense that would not have been

11   otherwise necessary (E.g. ECF No. 46 and related expenses). "A duty to preserve

12   information arises when a party knows or should know that the information is relevant to

13   pending or future litigation." Pettit v. Smith, 45 F. Supp. 3d 1099, 1105 (D. Ariz. 2014).

14   "Once a party knows that litigation is reasonably anticipated, the party owes a duty to the

15   judicial system to ensure preservation of relevant evidence." Surowiec v. Capital Title

16   Agency, Inc., 790 F. Supp. 2d 997, 1006 (D. Ariz. 2011). "The duty to preserve is triggered

17   not only when litigation actually commences, but also extends to the period before

18   litigation when a party should reasonably know that evidence may be relevant to

19   anticipated litigation." Pettit, 45 F. Supp. 3d at 1105 (quotation omitted). The duty includes

20   instituting a "litigation hold" on any document retention/destruction policies in effect. In

21   re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006); Surowiec,

22   790 F. Supp. 2d at 1006 (defense counsel is obligated to start a "litigation hold" when they

23   receive correspondence threatening litigation). Defendant is not aware of a matter where

1    Plaintiff has failed to institute and maintain a litigation hold during its own proceeding,

2    evidencing the true bad faith that Plaintiffs and their counsel have orchestrated in this

3    action.

4            In sum, Defendant should be awarded attorney fees under 28 U.S.C. § 1927.

5    Alternatively or additionally, the court should award fees under the court's inherent power

6    for the above referenced willful bad faith and reckless actions designed solely to expose

7    Defendant to additional expense and to delay Defendant's state law action. See, e.g., Fink

8    v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001) (attorney's reckless misstatements of law

9    and fact, combined with an improper purpose, are sanctionable under the court's inherent

10   power).

11                                   **CONCLUSION**

12           Through this entire action, Plaintiffs provided no evidence of ownership requisite

13   for statutory standing. When Plaintiffs attempted to introduce evidence of ownership, it

14   was clearly flawed and presented for the sole purpose of delaying Defendant's state action

15   against them. As a result, the Defendant is entitled to attorney fees pursuant to at least 35

16   U.S.C. § 285 and 28 U.S.C. § 1927. The Defendant has requested a reasonable hourly rate

17   and has shown that the amount of time requested and costs were reasonable under the stated

18   circumstances. Accordingly, the Court should order Plaintiffs and their counsel, jointly and

19   severally, to pay the total amount of $67,515.90 to Defendant.

20           Dated this 8th day of February, 2022.          /s/ Daniel S. Bretzius

21                                                          Daniel S. Bretzius, *pro hac vice*
                                                            Dan B Law PLLC
22                                                          75 South Main Street, #272
                                                            Concord, NH 03301
23                                                          (603) 731-2507
                                                            dan@danblaw.com

1

2          CARL M. HEBERT, ESQ.
           Nevada Bar #250
           2215 Stone View Drive
3          Sparks, NV 89436
           (775) 323-5556
4          carl@cmhebertlaw.com

5          Attorneys for Defendant
           Patrick Grimes

6
                    **<u>CERTIFICATE OF SERVICE</u>**
7
                Pursuant to LR 5-1, the undersigned certifies that, on February 8, 2022, I served
8
       the attached Motion for Attorney Fees and Exhibits via ECF to counsel of record for
9
       Plaintiffs:
10
                             Jason M. Wiley, Esq. & Ryan S. Petersen, Esq.
11                           Wiley Petersen
                             1050 Indigo Drive, Suite 130
12                           Las Vegas, Nevada 89145
                             jwiley@wileypetersenlaw.com
13                           rpetersen@wileypetersenlaw.com

14                           Jovan N. Jovanovic, Esq.
                             The Watson IP Group, PLC
15                           3133 Highland Drive, Suite 200
                             Hudsonville, MI 49426
16                           jjovanovic@watson-ip.com

17
       Dated this 8th day of February, 2022
18                                              /s/ Daniel S. Bretzius
                                                Daniel S. Bretzius
19                                              Dan B Law PLLC
                                                75 South Main Street, #272
20                                              Concord, NH 03301
                                                (603) 731-2507
21                                              dan@danblaw.com

22                                              Attorney for Defendant
                                                Patrick Grimes

23

                                        17

1

**Exhibit A – Itemization of Work Performed**

2

| **Date** | **Description & Attorney** | **Hours** |
|---|---|---|
| 2/8/2020 | Reviewing Complaint; Researching law on correction of inventorship of patents; telephonic correspondence with client (CMH) | 2.0 |
| 2/12/2020 | Preparing and filing Answer (CMH) | 1.3 |
| 2/12/2020 | Preparing and filing Certificate of Interested Parties (CMH) | 0.3 |
| 2/19/2020 | Reviewing Notice of Early Case Conference (CMH) | 0.1 |
| 2/25/2020 | E-mail correspondence to client re obligations under Fed. R. Civ. P. 26(f) (CMH) | 0.3 |
| 2/26/2020 | Telephonic Discovery Planning Conference (CMH) | 0.5 |
| 3/11/2020 | Preparing and serving Defendant's First Requests for Production of Documents (CMH) | 2.0 |
| 3/31/2020 | Reviewing signed, filed Scheduling Order from Court (CMH) | 0.2 |
| 3/31/2020 | Reviewing signed, filed Protective Order (CMH) | 0.1 |
| 4/7/2020 | Preparing and serving Defendant's First Set of Request for Admissions (CMH) | 0.7 |
| 4/10/2020 | Researching standing in patent cases (CMH) | 3.0 |
| 4/17/2020 | Researching federal law on motions for summary judgment; preparing and filing motion for summary judgment due to lack of standing (CMH) | 2.5 |
| 4/20/2020 | Researching damages in inventorship correction cases (CMH) | 1.7 |
| 5/6/2020 | Reviewing order setting Case Management Conference (CMH) | 0.1 |
| 5/8/2020 | Receipt and Review of Plaintiffs' Opposition to Motion for Summary Judgment (CMH) | 0.3 |
| 5/13/2020 | Preparing and filing Joint Case Management Report (CMH) | 1.5 |
| 5/22/2020 | Researching standing; preparing and filing Reply in Support of Motion for Summary Judgment (CMH) | 2.0 |
| 12/7/2020 | Reviewing order re Motion for Summary Judgment (CMH) | 0.2 |
| 12/14/2020 | Preparing and serving Defendant's First Set of Interrogatories (CMH) | 0.5 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

| 1/19/2021 | Telephonic correspondence with client (DSB) | 0.6 |
|---|---|---|
| 1/21/2021 | E-mail correspondence with opposing counsel re Plaintiffs' late discovery responses and Grimes deposition (DSB) | 0.3 |
| 1/21/2021 | Telephonic correspondence with client (DSB) | 0.3 |
| 1/22/2021 | Reviewing file and drafting letter re Plaintiffs' deficient discovery responses (DSB) | 2.8 |
| 1/22/2021 | Telephonic correspondence with client (DSB) | 0.2 |
| 1/23/2021 | Reviewing file and previous discovery; drafting Second Set of Production Requests; e-mail correspondence with Plaintiffs' counsel re same (DSB) | 5.0 |
| 1/25/2021 | Telephonic correspondence with client (DSB) | 0.3 |
| 1/26/2021 | E-mail correspondence with Plaintiffs' counsel re Grimes deposition (DSB) | 0.1 |
| 1/27/2021 | E-mail correspondence with Plaintiffs' counsel re Grimes deposition (DSB) | 0.2 |
| 1/28/2021 | E-mail correspondence with Plaintiffs' counsel re deposition (DSB) | 0.1 |
| 1/28/2021 | Preparing for and defending client in deposition (DSB) | 8.0 |
| 1/28/2021 | E-mail correspondence with Plaintiffs' counsel re Plaintiffs' deficient discovery responses and upcoming depositions (DSB) | 0.5 |
| 2/1/2021 | Telephonic correspondence with client (DSB) | 1.2 |
| 2/2/2021 | E-mail correspondence with opposing counsel re January 28, 2021 e-mail correspondence (DSB) | 0.1 |
| 2/4/2021 | Attempted telephone correspondence with Plaintiffs' counsel re unanswered e-mail correspondence (DSB) | 0.1 |
| 2/5/2021 | Attempted telephone correspondence with Plaintiffs' counsel re unanswered e-mail correspondence (DSB) | 0.1 |
| 2/5/2021 | E-mail correspondence with opposing counsel re February 2, 2021 and January 28, 2021 e-mail correspondence (DSB) | 0.1 |
| 2/8/2021 | E-mail correspondence with opposing counsel re discovery correspondence dating back to at least January 28, 2021 (DSB) | 0.4 |
| 2/10/2021 | E-mail correspondence with opposing counsel re discovery correspondence dating back to at least January 28, 2021 (DSB) | 0.5 |

| 2/10/2021 | Telephonic correspondence with client (DSB) | 0.4 |
|---|---|---|
| 2/11/2021 | E-mail correspondence with opposing counsel re deposition notices (DSB) | 0.1 |
| 2/11/2021 | Telephonic correspondence with client (DSB) | 1.3 |
| 2/12/2021 | E-mail correspondence with opposing counsel re discovery correspondence dating back to at least January 28, 2021 (DSB) | 0.4 |
| 2/13/2021 | Telephonic correspondence with client (DSB) | 1.3 |
| 2/14/2021 | E-mail correspondence with opposing counsel re 30(b)(6) deposition (DSB) | 0.1 |
| 2/14/2021 | E-mail correspondence with stenographer re updated deposition notices (DSB) | 0.1 |
| 2/14/2021 | Telephonic correspondence with client (DSB) | 1.5 |
| 2/15/2021 | Reviewing file and preparing for 30(b)(6) Deposition (DSB) | 5.8 |
| 2/15/2021 | E-mail correspondence with opposing counsel re 30(b)(6)deposition (DSB) | 0.1 |
| 2/16/2021 | E-mail correspondence with opposing counsel re 30(b)(6) deposition (DSB) | 0.2 |
| 2/16/2021 | Telephonic correspondence with client (DSB) | 0.8 |
| 2/17/2021 | E-mail correspondence with opposing counsel re upcoming depositions (DSB) | 0.1 |
| 2/18/2021 | E-mail correspondence with opposing counsel re Feb 17, 2021 correspondence (DSB) | 0.1 |
| 2/19/2021 | E-mail correspondence with opposing counsel re updated deposition notices (DSB) | 0.2 |
| 2/19/2021 | E-mail correspondence with stenographer re updated deposition notices (DSB) | 0.1 |
| 2/20/2021 | Preparing for Waldron deposition (DSB) | 5.1 |
| 2/21/2021 | Preparing for Waldron deposition (DSB) | 3.6 |
| 2/21/2021 | Reviewing 30(b)(6) deposition objection received same day from opposing counsel (DSB) | 0.1 |
| 2/21/2021 | Telephonic correspondence with client (DSB) | 1.5 |
| 2/22/2021 | E-mail correspondence with opposing counsel re deposition (DSB) | 0.1 |
| 2/22/2021 | Attending 30(b)(6) deposition (DSB) | 5.6 |

| | | | |
|---|---|---|---|
| 1 | 2/22/2021 | Telephonic correspondence with client (DSB) | 1.5 |
| 2 | 2/23/2021 | E-mail correspondence with opposing counsel re deposition (DSB) | 0.1 |
| 3 | 2/23/2021 | Attending Waldron Deposition (DSB) | 1.8 |
| 4 | 2/23/2021 | Attending Carter Deposition (DSB) | 0.7 |
| 5 | 2/23/2021 | Telephonic correspondence with client (DSB) | 2.8 |
| 6 | 2/27/2021 | Telephonic correspondence with client (DSB) | 0.6 |
| 7 | 3/1/2021 | Reviewing file and preparing motion for summary judgment (DSB) | 3.1 |
| 8 | 3/3/2021 | Reviewing file and preparing motion for summary judgment (DSB) | 1.6 |
| 9 | 3/6/2021 | Reviewing file and preparing motion for summary judgment (DSB) | 1.8 |
| 10 | 3/7/2021 | Reviewing file and preparing notice re confidentiality  (DSB) | 2.1 |
| 11 | 3/7/2021 | Researching and preparing motion for summary judgment (DSB) | 0.9 |
| 12 | 3/8/2021 | E-mail correspondence with opposing counsel notice re confidentiality (DSB) | 0.2 |
| 13 | 3/8/2021 | Telephonic correspondence with client (DSB) | 1.4 |
| 14 | 3/10/2021 | Reviewing 30(b)(6) deposition and preparing index re same (DSB) | 2.6 |
| 15 | 3/11/2021 | Reviewing Waldron and Carter personal depositions and creating indices re same (DSB) | 1.8 |
| 16 | 3/12/2021 | Reviewing all depositions and preparing combined index (DSB) | 1.2 |
| 17 | 3/13/2021 | Reviewing file, depositions & indexes; researching and preparing MSJ (DSB) | 4.2 |
| 18 | 3/14/2021 | Reviewing file, depositions & indexes; researching and preparing MSJ (DSB) | 3.3 |
| 19 | 3/20/2021 | Telephonic correspondence with client (DSB) | 2.5 |
| 20 | 3/23/2021 | Finalizing and filing MSJ (DSB) | 0.4 |
| 21 | 3/23/2021 | Telephonic correspondence with client (DSB) | 0.6 |
| 22 | 3/24/2021 | Reviewing Plaintiffs' first and second MSJ (DSB) | 1.1 |
| 23 | | | |

| | | |
|---|---|---|
| 3/24/2021 | Telephonic correspondence with client (DSB) | 1.2 |
| 3/25/2021 | Telephonic correspondence with client (DSB) | 1.6 |
| 3/27/2021 | Telephonic correspondence with client (DSB) | 0.9 |
| 3/29/2021 | Telephonic correspondence with client (DSB) | 0.7 |
| 3/31/2021 | Telephonic correspondence with client (DSB) | 0.3 |
| 4/5/2021 | Telephonic correspondence with client (DSB) | 1.1 |
| 4/6/2021 | Reviewing file, researching, and preparing Responses to Plaintiffs' MSJs (DSB) | 3.2 |
| 4/7/2021 | Reviewing file, researching, and preparing Responses to Plaintiffs' MSJs (DSB) | 2.2 |
| 4/10/2021 | Telephonic correspondence with client (DSB) | 1.6 |
| 4/11/2021 | Reviewing file, researching, and preparing Responses to Plaintiffs' MSJs (DSB) | 5.1 |
| 4/12/2021 | Reviewing file, researching, and preparing Responses to Plaintiffs' MSJs (DSB) | 3.5 |
| 4/13/2021 | Reviewing file, researching and preparing Responses to Plaintiffs' MSJs (DSB) | 6.1 |
| 4/13/2021 | Finalizing and Filing Responses to MSJ (DSB) | 0.4 |
| 4/13/2021 | Telephonic correspondence with client (DSB) | 1.7 |
| 4/14/2021 | Reviewing Plaintiffs' Response to Def's MSJ (DSB) | 1.8 |
| 4/16/2021 | Reviewing file, researching, and preparing Reply in Support of MSJ (DSB) | 4.1 |
| 4/18/2021 | Reviewing file, researching, and preparing Reply in Support of MSJ (DSB) | 3.5 |
| 4/19/2021 | Reviewing file, researching, and preparing Reply in Support of MSJ (DSB) | 2.0 |
| 4/20/2021 | Reviewing file, researching, and preparing Reply in Support of MSJ (DSB) | 2.1 |
| 4/25/2021 | Reviewing file, researching, and preparing Reply in Support of MSJ (DSB) | 2.4 |
| 4/27/2021 | Finalizing and Filing Responses to MSJ (DSB) | 2.6 |
| 4/27/2021 | Reviewing Plaintiffs' Motion to Strike (DSB) | 1.4 |

| | | | |
|---|---|---|---|
| 4/27/2021 | Reviewing file, researching, and preparing Response to Plaintiffs' Motion to Strike (DSB) | 3.8 |
| 4/27/2021 | Telephonic correspondence with client (DSB) | 2.0 |
| 4/28/2021 | Reviewing file, researching, and preparing Response to Plaintiffs' Motion to Strike (DSB) | 2.6 |
| 4/29/2021 | Telephonic correspondence with client (DSB) | 0.8 |
| 4/30/2021 | Reviewing file, researching, and preparing Response to Plaintiffs' Motion to Strike (DSB) | 3.1 |
| 5/2/2021 | Reviewing file, researching, and preparing Response to Plaintiffs' Motion to Strike (DSB) | 3.8 |
| 5/4/2021 | Travel to Public Storage; in-person correspondence with Public Storage employees re Plaintiffs' Storage Unit (CMH) | 2.3 |
| 5/5/2021 | Reviewing local rules regarding emergency motions; researching preservation subpoena (CMH) | 0.7 |
| 5/6/2021 | Preparing Declaration; Written correspondence with Public Storage representatives re preservation (CMH) | 1.8 |
| 5/6/2021 | Researching, preparing, and filing Emergency Motion to Preserve Plaintiffs' evidence (DSB) | 3.5 |
| 5/10/2021 | Finalizing and Filing Response to Plaintiffs' Motion to Strike (DSB) | 0.3 |
| 5/17/2021 | Reviewing Plaintiffs' Reply re Motion to Strike (DSB) | 0.3 |
| 1/25/2022 | Reviewing Order re MSJ and legal research re same (DSB) | 1.4 |
| 1/25/2022 | Telephonic correspondence with client (DSB) | 0.7 |
| 1/26/2022 | Preparing Bill of Costs (DSB) | 0.8 |
| 1/26/2022 | Researching and Preparing Motion for Attorney Fees (DSB) | 2.1 |
| 1/27/2022 | Researching and Preparing Motion for Attorney Fees (DSB) | 1.6 |
| 2/2/2022 | Researching and Preparing Motion for Attorney Fees (DSB) | 2.1 |
| 2/7/2022 | Researching and Preparing Motion for Attorney Fees (DSB) | 2.8 |

1    ***Exhibit B – Kerr* Factors**

2        (a) Results Obtained and Amount Involved.

3        Defendant's attorneys successfully achieved full dismissal of Plaintiffs' action and

4    now seek a total fee award of $67,515.90

5        (b) Time and Labor Required.

6        The main issues related to Defendant's inventorship of five patents and related legal

7    concepts, which are infrequently litigated in appellate courts. Addressing these issues

8    required very directed legal research and independent factual investigation, particularly

9    because Plaintiff was unwilling to provide relevant discovery responses and

10   documentation. Defendant took three depositions and propounded two sets of discovery

11   requests in an attempt to get Plaintiffs to actually produce relevant documentation.

12   Defendant's counsel prevailed on a Motion for Summary Judgment and successfully

13   defended against two of Plaintiffs' Motions for Summary Judgment, along with a frivolous

14   Motion to Strike. Defendant's counsel also was required to seek preservation of evidence

15   that was marked for destruction because Plaintiffs actively failed to retain said evidence.

16       (c) Novelty and Difficulty of the questions involved.

17       Defendant's counsel is not aware of a single case where a patent owner alleged

18   improper inventorship of its own patents and commenced suit to change inventorship of

19   the same. This unique factual situation raised interesting concepts, including those raised

20   in Defendant's Motion for Summary Judgment and related Reply.

21       (d) Skill requisite to perform the legal service properly.

22       Patent law in general, and actions under 35 U.S.C. § 256 more specifically, are

23   unique areas of law. Given that the case involved unique circumstances, it required counsel

24

1   to have skill in this area of litigation.

2         (e) <u>Preclusion of other employment by the attorney due to acceptance of the case</u>.

3         Given the amount of time that Defendant's counsel needed to devote to this matter,

4   they were precluded from taking on other work and projects.

5         (f) <u>Customary Fee</u>.

6         As set forth in the body of Defendant's Motion, the rates of $320/hour for Attorney

7   Bretzius and $450/hour for Attorney Hebert are at or below the reasonable rate for attorneys

8   with similar experience in Nevada.

9         (g) <u>Fixed Or Contingent Nature of Fee</u>.

10        The fee arrangement in this case was a standard fixed agreement based upon the

11  hourly rates for time worked.

12        (h) <u>Time limitations imposed by the client or the circumstances</u>.

13        There were no demanding time limitations in this case.

14        (i) <u>The experience, reputation, and ability of the attorney(s)</u>.

15        Defendant's counsel are well respected and regarded in their respective areas of

16  practice. Attorney Hebert has successfully practiced law for forty (40) years. Attorney

17  Bretzius has practiced law for nearly eight years and graduated *cum laude* from UNH

18  School of Law in 2014 as both a Daniel Webster Scholar and IP Scholar.

19        (j) <u>The "undesirability" of the case, if any</u>.

20        The Plaintiff's bad faith litigation tactics and withholding of basic evidence

21  required patience on the part of Defendant's counsel that may have made the case

22  undesirable for other prospective counsel.

23

1         (k) <u>The nature and length of the professional relationship with the client</u>.

2         The professional relationship between Defendant and counsel only involved the

3 years of litigation of this case.

4         (l)  <u>Awards in similar cases</u>.

5         There is no case like the present one, but typical awards under 35 U.S.C. § 285

6 exceed $100,000 and can rise to millions of dollars.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*Exhibit C - Nontaxable Costs Included in Fee Award*

| Description | Cost |
|---|---|
| 01/08/2021 - Pro Hac Vice Fee | $250.00 |
| 05/17/2021 – Fee to Remove Plaintiffs' Storage Unit from Destruction | $899.90 |
| 05/17/2021 – Monthly Rental Fees | $130.50 |
| 08/22/2021 – Monthly Rental Fees | $414.00 |
| 09/08/2021 – Monthly Rental Fees | $228.50 |
| 10/05/2021 – Monthly Rental Fees | $228.00 |
| 11/05/2021 – Monthly Rental Fees | $270.00 |
| 12/06/2021 – Monthly Rental Fees | $270.00 |
| 01/03/2022 – Monthly Rental Fees | $270.00 |
| 02/08/2022 – Monthly Rental Fees | $270.00 |
| **TOTAL** | $3,230.90 |

Defendant has attached supporting documentation hereto.



**PROOF OF PUBLICATION**

**STATE OF WISCONSIN SS.**
**COUNTY OF BROWN**

PUBLIC STORAGE MGMT/N MCCARRAN
1020 N MCCARRAN BLVD

RENO NV 89512

Being first duly sworn, deposes and says: That as the legal clerk of the Reno Gazette-Journal, a daily newspaper of general circulation published in Reno, Washoe County, State of Nevada, that the notice referenced below has published in each regular and entire issue of said newspaper between the date: 03/06/2021 - 03/16/2021, for exact publication dates please see last line of Proof of Publication below.

<u>03/09/2021, 03/16/2021</u>

*M Steinhart*

Legal Clerk

Subscribed and sworn before me this
16th of March 2021.

*Kathleen Allen*

NOTARY PUBLIC RESIDING
AT STATE OF WISCONSIN
COUNTY OF BROWN

Notary Expires:  1-7-25

KATHLEEN ALLEN
Notary Public
State of Wisconsin

Ad#:0004632997
P O : Public Storage
# of Affidavits 1
**This is not an invoice**

---

**NOTICE OF PUBLIC SALE**

To satisfy the owner's storage lien, PS Orange Co. Inc. will sell at public lien sale on March 25, 2021, the personal property in the below-listed units, which may include but are not limited to: household and personal items, office and other equipment. The public sale of these items will begin at 10:00 AM and continue until all units are sold. The lien sale is to be held at the online auction website, www.storagetreasures.com, where indicated. For online lien sales, bids will be accepted until 2 hours after the time of the sale specified.
**PUBLIC STORAGE # 23873**, 9450 S Virginia St, Reno, NV 89511, (775) 440-4468
Sale to be held at www.storagetreasures.com.
103 - Tolliver, Tosia; A34 - Delanoza, Rodney; B74 - Delanoza, Rodney; C35 - Saldana-Marquez, Aldo
**PUBLIC STORAGE # 20282**, 4875 S McCarran Blvd, Reno, NV 89502, (775) 376-9153
Sale to be held at www.storagetreasures.com.
1026 - Dzygrynluk, Sarah; 2009 - Sanchez, Daniel; 3019 - Renfrow, Shannon; 3020 - Dickey, Dakota; 6015 - Snipe, Airon; 6078 - Gil, Nicholas; 7064 - Galindo, Mario
**PUBLIC STORAGE # 24535**, 200 Telegraph Street, Reno, NV 89502, (775) 376-9081
Sale to be held at www.storagetreasures.com.
A104 - Asklin, Andrew; A136-A - Ihurman, Keara; A141-A - Bennett, Isreal; A143-F - Orta, Mark; A161 - Alternative Petroleum Technologies Inc, Waldron, Jack; B032-J - Pahe, Brenton Mathew; B037-F - Green, Jacob; C222 - Myers, Melissa; C229 - Caldwell, Thomas; C239 - Huckabee, Dillon; D346 - Aguirre-Marquez, Adriana; E420 - Velasco, Angel; F505 - lobste, Jeremy
**PUBLIC STORAGE # 77587**, 2410 Wrondel Way, Reno, NV 89502, (775) 689-0483
Sale to be held at www.storagetreasures.com.
1313 - Pursley, Jesse; 1319 - Rivera Herrera, Rodolfo; 1427 - Brooks-Tracy, Tiffany; 1502 - Moghaddam, Darius; 1542 - Jones, Ethan; 1545 - Rea, Freddy; 1603 - Dowd, Keith; 2108 - Moose, Ashley; 2208 - Sanchez, Yvette; 2330 - Jamison, Alicia; 2339 - Sagan, Erin; 2343 - Campbell, Dannie; 2452 - Reid, Christopher; 3401 - Reyes, Osbaldo
**PUBLIC STORAGE # 23074**, 1295 Selmi Drive, Reno, NV 89512, (775) 432-4048
Sale to be held at www.storagetreasures.com.
A02 - Jones JR, Randall; A23 - Mccannell, Alfred; B05 - East, Shannon; B39 - Ream, Desiree; C33 - Smith, Shawn; E14 - Hartman, Kurt; E58 - Davis, James; F21 - Lambert, Karon; H64 - Smith, Savannah
**PUBLIC STORAGE # 23068**, 1020 N McCarran Blvd, Reno, NV 89512, (775) 432-6507
Sale to be held at www.storagetreasures.com.
A025 - Cloud, Connie; A077 - Reid, William; C010 - Green, Heather; C049 - Olivares Gutierrez- OWNER, Gustavo; C059 - Bradley, Joanna; D035 - Riley, Kenneth; F021 - Kern, Lois; G017 - Berlanga, Trina; G027 - Swank, William; G062 - Mccarthy, Roman; H003 - Mullins, Nathan; H036 - Sell, Shad; H042 - Cloud, Connie; H052 - Sosa, Lino; I003 - Satkeld, Tony; I004 - Rubicon Explorer Corp Caldwell, Turner
**PUBLIC STORAGE # 23071**, 450 Baxington Way, Sparks, NV 89434, (775) 835-4426
Sale to be held at www.storagetreasures.com.
A036 - Mullins, Bonita; B010 - Jones, Jeanie; C042 - Thetford, Beverly; E032 - Riley, Kelsea; G015 - Acosta, Lizeth; I002 - Starr, Robert; I006 - Lamblin, Bernice; I012 - Berry, Bill; K031 - Tedesco, Gino; K049 - Acosta, Lizeth
**PUBLIC STORAGE # 23067**, 1220 Venture Dr, Gardnerville, NV 89410, (775) 238-4463
Sale to be held at www.storagetreasures.com.
B045 - Cleeves, Nicole; C237 - Cleeves, Nicole; D264 - Drugge, David

Public sale terms, rules, and regulations will be made available prior to the sale. All sales are subject to cancellation. We reserve the right to refuse any bid. Payment must be in cash or credit card-no checks. Buyers must secure the units with their own personal locks. To claim tax-exempt status, original RESALE certificates for each space purchased is required.   By PS Orangeco, Inc., 701 Western Avenue, Glendale, CA 91201. (818) 244-8080.
0004632997

Mar. 9, 16, 2021

**Public Storage**

# Your Payment Receipt

200 Telegraph Street, Reno, NV, 89502, (775) 376-9081

Receipt #: **923187563**
05/11/2021 3:50:24 PM

---

Thank you for using Public Storage! This confirms your payment of **$899.90** on 05/11/2021 by **American Express ending in 6009**.

## Your Account Details

Jack Waldron

| Account Number | Phone | Email | Address |
|---|---|---|---|
| 22481805 | (775) 409-3951 | info@altpetrol.com | 280 Greg Street, Suite 20 Reno, NV 89502 |

## Storage Payment Details

Location Address: 200 Telegraph Street, Reno, NV, 89502, (775) 376-9081

| Space Number: A161 | Payment Received | Past Due/Due Now | Due Next |
|---|---|---|---|
| Rent | $702.00 | $0.00 | $0.00 |
| Insurance | $0.00 | $0.00 | $0.00 |
| Late Fees | $140.40 | $0.00 | $0.00 |
| Lien Fee | $57.50 | $0.00 | $0.00 |
| **Total** | **$899.90** | **$0.00** | **$0.00** |

## Payment Method Details

| | Amount |
|---|---|
| American Express ▆▆▆▆▆ | $899.90 |
| **Total** | **$899.90** |

PLEASE SIGN HERE

05/11/2021

DATE

The information contained in this message is confidential and intended only for the recipient to which it was given. ©2017 Public Storage. All rights reserved.



# Your Account
## Patrick Grimes | Account Number: 54654127

## Payment History

Print 

Summary view  |  Detailed view

| Date | Unit | Payment | Amount |
|---|---|---|---|
| **Transaction**<br>#212854668<br><br>**Date Received**<br>02/08/2022 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Pending Payment | **Amount**<br>$270.00 |
| **Transaction**<br>#210199847<br><br>**Date Received**<br>01/03/2022 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Payment | **Amount**<br>$270.00 |
| **Transaction**<br>#208302189<br><br>**Date Received**<br>12/06/2021 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Payment | **Amount**<br>$270.00 |
| **Transaction**<br>#206110003<br><br>**Date Received**<br>11/05/2021 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Payment | **Amount**<br>$270.00 |
| **Transaction**<br>#203932027<br><br>**Date Received**<br>10/05/2021 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Payment | **Amount**<br>$228.00 |
| **Transaction**<br>#201999003<br><br>**Date Received**<br>09/08/2021 | **Unit Details**<br>200 Telegraph Street<br>#A161 · 12' x 20' | **Payment Method**<br>CC ▮▮▮▮<br><br>**Transaction Type**<br>Payment | **Amount**<br>$228.50 |

Ask us

| Date | Unit | Payment | Amount |
|---|---|---|---|
| **Transaction** #200265912 <br> **Date Received** 08/22/2021 | **Unit Details** 200 Telegraph Street #A161 · 12' x 20' | **Payment Method** CC ▮▮▮▮ <br> **Transaction Type** Payment | **Amount** $414.00 |
| **Transaction** #941834774 <br> **Date Received** 05/17/2021 | **Unit Details** 200 Telegraph Street #A161 · 12' x 20' | **Payment Method** CC ▮▮▮▮ <br> **Transaction Type** Payment | **Amount** $130.50 |

Public Storage Near Reno, Nevada



**Self Storage Near**

2410 Wrondel Way

Reno, NV 89502



**Self Storage Near**

4875 S McCarran Blvd

Reno, NV 89502

 Ask us